## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS

I, Steve Stoinski, Special Agent with the United States Fish and Wildlife, Office of Law Enforcement ("FWS-OLE"), being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint alleging that SIMON ANDREAS LANGER attempted to smuggle goods out of the United States in violation of 18 U.S.C. § 554(a).

2. I am a Special Agent with the U.S. Fish and Wildlife Service, Office of Law Enforcement ("FWS-OLE"). I have been a special agent with FWS-OLE for twenty one years. I am currently assigned to investigate crimes involving the illegal importation and transportation of wildlife. During my tenure with FWS-OLE, I have participated in a variety of criminal wildlife investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, executed search warrants, reviewed bank records, shipping records, transportation records, and other business records, and retrieved and analyzed information in the Law Enforcement Management Information System ("LEMIS"), a database used by the United States Fish and Wildlife Service (the "Service") to keep track of, among other things, the declared importation and shipment of wildlife. Through my training, education, and experience, I am familiar with the techniques and methods used by individuals involved in criminal wildlife trafficking.

3. For the reasons set forth in more detail below, I submit that there is probable cause to believe that SIMON ANDREAS LANGER fraudulently and knowingly attempted to export endangered and threatened cactus seeds from the United States.

4. The facts set forth in this affidavit are based on my personal knowledge as the investigation's Case Agent; knowledge obtained from other individuals including law enforcement personnel, my review of documents, reports and other evidence. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. The information contained within this affidavit does not represent every fact learned by law enforcement during the course of the investigation. Rather, I have only included information sufficient to establish probable cause for the requested criminal complaint.

## BACKGROUND: CRIMES RELATED TO WILDLIFE TRAFFICKING

5. The Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., implements the provisions of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), which was signed by the United States in 1973 and became effective in 1975. CITES, March 3, 27 U.S.T. 1087, 993 U.N.T.S. 243 CITES. 16 U.S.C. §1537(a). Species listed by CITES 180 member nations are placed on one of three appendices and given a sliding scale of protection. 50 C.F.R. Part 23. Appendix I includes species threatened with extinction and is the most restrictive, banning plant trade between two countries for commercial purposes. Appendix II allows commercial trade under permit for species not yet considered in danger of imminent extinction but which must be controlled in order to avoid utilization incompatible with survival. Appendix III contains species

that are protected in at least one country which has asked the other CITES countries for assistance in controlling trade.

6. The ESA also makes it unlawful for any person to: (a) import into, or export from the United States, any endangered plant species; (b) remove and reduce to possession any such species from areas under Federal jurisdiction; (c) deliver, receive, carry, transport, or ship any endangered species in interstate or foreign commerce in the course of a commercial activity; or (d) violate any regulation pertaining to endangered or threatened species listed by the Secretary of the Interior or Commerce. 16 U.S.C. § 1538(a)(1); 50 C.F.R. § 23.13. "Plant" is defined to include the parts and seeds of a plant. 16 U.S.C. § 1532(14).

7. Furthermore, the ESA makes it unlawful for any person to import or export any plants except at a port or ports designated by the Secretary of the Interior. 16 U.S.C. §1538(f). Plants protected by CITES must go through a Port designated for the exportation of such plants, which are listed at 50 C.F.R. § 24.12. CITES-protected plants are to be cleared only through these designated ports of entry. 50 C.F.R. § 24.11. Denver is not a designated port of entry for CITES-protected plants. 50 C.F.R. §24.12.

8. Pursuant to 50 C.F.R. § 17.61 it is unlawful to (a) export any endangered plant, (b) remove or reduce to possession any endangered plant from an area under Federal jurisdiction, or (c) deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever, and in the course of commercial activity, an endangered plant. . These same prohibitions apply to threatened plants, unless a permit is first obtained. 50 C.F.R. § 17.71. Under 50 C.F.R. § 17.72, all exporters seeking a permit for a threatened plant must submit an application, Form 3-200, to the United States Fish and Wildlife Service, pursuant to the permitting process set forth at 50 C.F.R. § 17.72. The exporter must also have a valid CITES document for plants listed under CITES Appendix I. 50 C.F.R. § 23.20.

9. *Escobaria robbinsorum, Coryphantha robbinsorum*, and *Cochiseia robbinsorum*, colloquially known as the "Cochise Pincushion," "Robbin's Cory Cactus" or the "Cochise Foxtail Cactus," is a CITES Appendix II species that has been listed as "threatened" under the ESA since January 9, 1986. 50 C.F.R. §17.12. Accordingly, it is subject to regulations promulgated by the Secretary of the Interior, including the prohibitions set forth at 50 C.F.R. §§ 17.61 and 17.71. On April 6, 2007 .the USFWS's Ecological Services office published a Cochise Pincushion Cactus 5-Year Review which included the following paragraph:

> Illegal collecting of this species was identified as a potential threat in the recovery plan and listing documents (USFWS 1986 and 1993). The desirability of this species, coupled with its limited distribution, increases the potential for significant impacts to populations if illegal collection were to occur. No evidence of illegal collection within known populations has been observed. However, collection remains a real threat to this species due to its limited numbers and distribution. Cochise pincushion cacti are available commercially on a limited basis, but if interest in this species increases or commercial availability decreases, pressure to collect plants from the wild may increase. The unique, rare nature of this species increases its desirability among collectors.

A. **SIMON ANDREAS LANGER Was Observed Visiting the Cochise Pincushion's Habitat Carryings Bags of Suspected Cactus Seeds**

10.     On December 4, 2018, a person identifying himself as "Simon Langer" sent an email from the email address Langer.Simon.1990@web.de to the Cochise County Sheriff's Office ("CCSO").  In the email, "Langer" explained that he was from Black Forest, Germany and stated "I love Cactus a long time, I have some plants in my smal [sic] collection."  "Langer" then told the CCSO that he had previously been in the United States to look at cacti in their natural habitats.  "Langer" then specified "I wont [sic] to search some Cactus ( Escobarria robbinsorum ) near the Sycamore Canyon Road" and asked whether travelling along that road, which is near the border with Mexico, would be safe.

11.     A CCSO Ranch Patrol Deputy responded to "Langer", telling him that he had grown up in Cochise County, knew the area, and could show "Langer" where a "stand of coryphantha robbinsorum."  He also noted that the area in question is "very remote" with "little to no law enforcement presence" and alerted "Langer" to the area's problem with drug and human smuggling.  "Langer's" response, on December 6, 2018, thanked the CCSO deputy for the help but did not follow upon the invitation to be shown the cactus by the deputy.  Instead, he asked the deputy for "coordinates or acurate Informations where i can find Corphantha robbinsorum [sic]," saying he would not give the information to others and only wanted to "make Photos from the Plants."  "Langer" said he would be in the rea around "on 06 June or Maybe 7 June 2019."

12.     On or about June 10, 2019 Victor Harden , a Federal Wildlife Officer ("FWO") assigned to the Leslie Canyon National Wildlife Refuge, made contact with SIMON ANDREAS LANGER and his girlfriend, who were seen photographing cacti near Douglas, Arizona, which is in Cochise County.  During the encounter, LANGER showed Harden the photographs, which Harden photographed (that is, Harden took photographs of the photographs that had been taken by LANGER).  LANGER also showed Harden an envelope containing numerous plastic bags containing what Harden believed, based on his experience, to be cactus seeds.  The bags were marked with information such as the name of a state and what appeared to be scientific names.  Harden asked LANGER if he was familiar with laws regarding exporting cacti from the United States.  LANGER acknowledged his familiarity.  The encounter was recorded on Harden's body camera, but I have not yet been able to obtain or review the footage.  LANGER and his girlfriend were identified during the encounter by their passports, which were shown to Harden and photographed by him.

13.     I believe that SIMON ANDREAS LANGER is the user of the Langer.Simon.1990@web.de email address used to email the CCSO because (1) the name used in the email matches the name given to Harden, (2) the "Simon" who sent the email said he would be looking for cacti in Cochise County in roughly the area where LANGER was found by Harden and, (3) the "Simon" who sent the email said he would be at that location in a June time frame that roughly matches, within a few days, the time in which LANGER was found actually looking for cacti.

14. I know, from my experience and from speaking to other agents with experience investigating the illicit market in cacti, that there is an avid community of cactus collectors in Europe. Members of this community often have a strong interest in rare, often threatened or endangered cacti, found in North America. Members of this community often share information online. One common resource is the Cactus and Succulent Field Number Query (http://www.fieldnos.bcss.org.uk/fieldno.html), which allows collectors to input, edit and search for collection data by species or the collectors name or "field number." This website, which can also be accessed at (http://cl-cactus.com), lists a "Simon Langer" with field number SL 14. This Langer uploaded a photograph and coordinates for a non-protected cactus in Grand Canyon National Park in June 2018. I do not know whether the "Simon Langer" on the website is, in fact, SIMON ANDREAS LANGER, but there is probable cause to believe that this is the case: travel records from Customs and Border Patrol show that LANGER left the United States from Las Vegas in June 2018, which is consistent with a statement by LANGER in in his December email exchange with the CCSO that "this year I travel the Southwest of the United States for visit the Cacti in there natural habitats. [sic]" Based on this information, I believe that LANGER is likely a collector of cacti who would, as he told Harden, be aware of the regulations protecting certain species.

15. SIMON ANDREAS LANGER and his girlfriend told Harden that they were scheduled to fly out of Denver International Airport (DIA) on either June 29, 2019 or June 30, 2019. However, when a special agent with FWS-OLE contacted a Customs and Border Patrol Agricultural Specialist at DIA, the agent learned that LANGER and WUNDERLE were actually scheduled to depart on June 24, 2019 at 10:00 P.M. on an Edelweiss Air Flight to Zurich, Switzerland.

### B. LANGER Attempts to Leave the United States With a Box Containing 111 Different Types of Cactus Seeds, Including the Seeds of Endangered and Threatened Cacti

16. On June 24, 2019 I was informed by United States Customs and Border Patrol ("CBP") Officers that LANGER and his girlfriend had checked two bags for their flight to Europe. I accompanied CBP officers to inspect the two checked bags: a blue suitcase and a pink suitcase with baggage claims tags for, respectively, the girlfriend and LANGER. Pursuant to their border search authority, a CBP officer and a FWS wildlife inspector searched the bags. Inside, they found a white cardboard box with the logo "Route 66" embossed on the side. Taped to the top of the box was a handwritten note that stated "CACTUS SEEDS — NO CITES 1 or U.S. FISH & WILDLIFE SEEDS OR PLANTS INSIDE!" Below that was a sketched picture of what appeared to be a Saguaro-type cactus. Inside the box, taped to the side and flopped on top of the box's contents, was a business card for FWO Harden, the officer who had spoken with LANGER in Arizona. Below the business card were small transparent glassine envelopes containing seeds. Written on each of the envelopes was the scientific Latin names, which I recognized to be associated with the cactus genus. I counted the envelopes and found 111 of them, each containing cactus seeds. None of these envelopes was labeled with a name associated with the Cochise Pincushion.

17. At the time of this affidavit, I have not had time to determine whether all of the 111 envelopes contains seeds protected by CITES or the ESA. However, 6 of the envelopes contained names listed on CITES Appendix II and 1 contained names listed on CITES Appendix 1. To export any of these seeds, LANGER would have needed to declare them at Customs and obtain a permit from the Service. At no time relevant to the time period described in this Complaint has the

defendant, SIMON ANDREAS LANGER applied for or received ESA or CITES permits authorizing the export of any plants or their parts.

18.     After finding the seeds in the blue bag, I accompanied officers with CBP and United States Department of Homeland Security, Homeland Security Investigations ("HSI") for their interview of SIMON ANDREAS LANGER and his girlfriend. LANGER and his girlfriend were intercepted while they were walking down the jet bridge for their flight.

### C. LANGER Admits to Taking Cactus Seeds in Violation of the Law

19.     After identifying SIMON ANDREAS LANGER, a CBP officer asked LANGER if LANGER had anything to declare. LANGER responded that he had cactus seeds and repeated the message that was on his note: that the seeds were not CITES 1 or subject to Fish and Wildlife. The CBP officer told LANGER that they would need to speak with him about the seeds. At that point LANGER and his girlfriend were escorted to an interview room in the offices of Customs.

20.     Once CBP and HSI had escorted SIMON ANDREAS LANGER and his girlfriend to the interview room, I entered the room with an HSI agent to conduct the interview. Before conducting the interview, I advised LANGER of his *Miranda* rights. I also provided him with a copy of those rights in both English and German. LANGER acknowledged that he understood his rights and agreed to speak with me. I offered LANGER the services of a German translator. LANGER responded that he did not think he needed an interpreter and indicated that he would ask for one if he felt otherwise.

21.     The interview took place at approximately 10:06 p.m. on June 24, 2019 and lasted approximately an hour and a half. During the interview SIMON ANDREAS LANGER told me the following, in sum and substance and in pertinent part:

   a.    LANGER said this was his second trip to the United States with his girlfriend. He had previously been to the United States for four weeks in May and June of 2018, travelling through the southwest to look at cacti, visit national parks, and camp on public lands. LANGER admitted that during this trip he collected the seeds of 14 cactus species and took them back to Germany without declaring the export of those seeds from the United States or their import into Germany.

   b.    LANGER said that he and his girlfriend had just finished another four-week tour of the southwest United States. LANGER told me that the main purpose of the trip was to view cacti in their natural habitat. LANGER had been collecting cacti since childhood and had over 200 specimens at his home in Germany.

   c.    LANGER admitted that he collected cactus seeds from federal lands and National Parks, but could not recall the specific national parks from which they were collected.

   d.    LANGER told me that he had asked park rangers about cacti, but that they did not seem to know much about them. LANGER found cacti by visiting cactus forum websites, where

other cactus enthusiasts describe where they can be located. LANGER stated that he also shares his cactus discoveries on these forums.

   e. LANGER said that he had collected the seeds of numerous cacti during the trip, including cactus species on Appendix II. He denied collecting any seeds from species listed on Appendix I.

   f. LANGER acknowledged an understanding of the laws relating to CITES and the protection of cacti. He said he used Wikipedia to help identify the protected species of a cactus. However, he told me that he believed cacti listed in Appendix II could be collected.

   g. Throughout the interview, LANGER referred to cacti using their scientific names. I asked LANGER about *escobaria robbinsorum*. LANGER admitted to being the person who contacted the CCSO. He recounted finding the cactus and speaking with FWO Harden. When asked whether he had collected seeds from that species [SKC], he initially denied doing so. However, when told that he needed to tell the truth about collecting the seeds, he admitted that he did. He then described putting the seeds into the box, but told me that he did not label them "*escobaria robbinsorum*." Instead, he labeled them "*Mammillaria Yarahamii*." He told me that he labeled them that way because he believed that the seeds were listed on CITES Appendix I.

   h. Throughout the conversation, LANGER described his enthusiasm for the hobby of cactus collecting. He told me that about fifty percent of the seeds that he obtains actually grow into seedlings. He typically keeps two seedlings and sells the rest to other cacti enthusiasts.

   i. LANGER told me that nobody in Germany has *escobaria robbinsorum* in their collection. As a result, he hoped to successfully cultivate cacti so that he could sell those cactis and seeds. LANGER told me that the value of the seedlings was approximately €8.

  22. After interviewing SIMON ANDREAS LANGER, I interviewed his girlfriend. Before the interview she, too, was *Mirandized*. She confirmed that she was with LANGER throughout their cactus-finding trip and helping him collect the seeds. She said she knew that LANGER had picked up seeds belonging to *escobaria robbinsorum*. She also told me that LANGER falsely told FWO Harden that he had not collected any seeds belonging to that plant and confided that, after that false statement, she was worried about getting in trouble with the authorities. She discussed with LANGER what to do with those seeds and LANGER told her that he had disposed of the seeds at Chatfield State Park while he was in the bathroom.

  23. After interviewing the girlfriend, I informed SIMON ANDREAS LANGER that he was under arrest.

## STATEMENT OF PROBABLE CAUSE

24. For the reasons set forth above, I submit there is probable cause to believe that LANGER attempted to export threatened and endangered cactus seeds out of the United States, in violation of 18 U.S.C. 554(a).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully Submitted,

s/ Steve Stoinski
Steve Stoinski
Special Agent
FWS-OLE

Sworn to before me this  25th  day of June, 2019.

_____
Hon. S. Kato Crews
United States Magistrate Judge

**Reviewed and submitted by Bryan David Fields, Assistant United States Attorney.**